2023 IL App (1st) 1220473-U

No. 1-22-0473

Order filed June 12, 2023.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 14830 |
| | ) | |
| JAMES JONES, | ) | The Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE LAVIN delivered the judgment of the court.
Justice Coghlan concurred in the judgment.
Justice Pucinski specially concurred.

ORDER

¶ 1    *Held*: Defendant challenged his 38-year sentence, imposed at resentencing, claiming it was an abuse of the trial court's discretion and excessive. This court affirmed.

¶ 2    Following a bench trial, defendant James Jones was found guilty of committing first

degree murder and aggravated discharge of a firearm when he was 17 years and 11 months old,

and he was ultimately sentenced to an aggregate term of 38 years' imprisonment. Defendant

1

argues that at resentencing, the court failed to properly consider mitigating factors in accordance with section 5-4.5-105 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-105 (West 2020)) and that the court was prejudiced towards him, erroneously judging his right to remain silent. We affirm.

¶ 3                                    BACKGROUND

¶ 4       Evidence at trial showed that in June 2014, with a gun in hand and while wearing a dark hoodie tied over his face, defendant approached the two victims, Demarcus Boswell and Kajuan Biddings, who were situated right next to each other on the streets of South Side Chicago. Defendant then pointed the gun at them and shot at least six times, hitting Boswell three times in the face, chest, and leg from about four to six feet away. Boswell, who was also age 17, died. There was no evidence that Boswell had a gun. Defendant made a videotaped statement to police admitting the crimes, acknowledging outright that he "murdered somebody." The video was entered into evidence and played before the court.[1] After the shooting, defendant told his friend/acquaintance that he "had shot somebody," in addition to shooting *at* two people. Defendant and his friend/acquaintance passed by the crime scene, then went and played video games. Defendant told another acquaintance that he shot at "Little Markie [Boswell] and them," then showed her the gun. He handed this witness his gun, hoodie, cell phone, and charger, but she gave the gun back to him sometime later.

¶ 5       After being fully admonished, defendant waived his right to testify. Defendant's self-defense claim stemmed from his videotaped statement. Defendant stated that on the day in question, he was walking to his cousin's house with his hoodie tied around his face due to the rain when he encountered the two victims, who tried to jump him. Boswell "rushed at" him and

---

[1]This court has reviewed the videotape in full. We note that at various points, the audio is muffled and the video skips forward .

hit defendant just prior to the shooting. Defendant asserted the two victims previously had tried to shoot him and kill him. Defendant also told authorities he knew of three houses where guns were located.

¶ 6     The trial court specifically found that defendant was not acting in self-defense when he shot Boswell dead and shot at Biddings, which supported the guilty findings of first degree murder and aggravated discharge of a firearm. Initially, defendant was sentenced to an aggregate term of 50 years' imprisonment, 45 years for murder and 5 years for aggravated discharge of a firearm to be served consecutively. Defendant appealed, but this court vacated defendant's sentence and remanded the cause for a new sentencing hearing under *People v. Buffer*, 2019 IL 122327, ¶ 41, which determined that a prison sentence of over 40 years for juvenile offenders constitutes a *de facto* life sentence.[2]

¶ 7     On remand, defendant first filed a motion under *People v. Krankel*, 102 Ill. 2d 181 (1984), arguing his trial attorney was ineffective because defendant wished to testify and "tell the Court about his frame of mind and self-defense, but his attorney convinced him not to." The trial court summarily dismissed this claim after reading aloud the trial transcript, wherein the court fully admonished defendant that the right to testify was his alone, and defendant knowingly, freely, and voluntarily waived that right. The transcript thus completely rebutted defendant's claim.

¶ 8     The parties then stipulated that the original sentencing hearing would be made part of the record, and an extensive resentencing hearing followed on March 28, 2022.[3] In short, the State

---

[2]More specifically, defendant withdrew his appeal in No. 1-17-0762, the 50-year sentence was vacated, and the cause was remanded for a new sentencing hearing under *Buffer*, as defendant's "Agreed Motion for Summary Remand" was allowed.

[3]Given that the trial court was ordered to reconsider defendant's sentence under *Buffer*, we focus almost exclusively on the court's commentary from resentencing.

3

presented the victim impact statements of Boswell's two nieces, sister, and parents, as well as two presentence investigation reports (2016 and 2021). For his part, defendant presented a number of letters and awards, for example, from a community violence prevention program at St. Sabina church, from his youth ministry director, his pastor (who was also his uncle), and a school counselor, all noting his volunteer work, mentorship of young people, and community service prior to the crimes. He participated in extracurricular activities such as the year book, basketball and volleyball, and he worked. He had no prior juvenile record, and he was registered to attend college in fall of 2014.

¶ 9    In addition, defendant presented testimony from a Cook County correctional officer, that he was respectful and obeyed orders while incarcerated, and he had earned a certificate in a program on fatherhood (the record established that both Boswell and defendant left behind young children). Yet, the State noted that defendant had been charged with public indecency in 2020 for exposing his private parts while in jail. Defendant also was in a faction of the Black Disciples named Face World from 2006 to 2017, although he claimed it was not a gang. Defendant further presented testimony from his mother, that he was well-loved, came from a stable, two-parent home, but he was bullied, harassed, and beaten by Boswell and his friends from the fifth grade on and they had shot at him on several occasions. It was impossible for defendant to avoid Boswell, and his mother had to retrieve him several times due to the harassment. Defendant also testified, expressing remorse and asking forgiveness, but he claimed he was trying to protect himself since Boswell had previously "tried to shoot" him and they always fought. He stated he was sorry his actions took a life, he wished he could go back in time, and further, "I'm not trying to justify my actions; but where I come from, everything happen at any time; and honestly, I felt like my actions were going to be taking his life." Defendant

4

reported in his 2021 PSI that his neighborhood had high crime, shootings, and gang fighting. Defendant asked the judge to consider his rehabilitation, insofar as he now followed rules, he now thinks before acting, and he knows there are consequences to carrying a weapon.

¶ 10    The defense argued at length, noting that on the day of the murder, defendant was walking from his house to his cousin's when he saw Boswell and Biddings, and Boswell punched defendant.[4] Defendant felt his life was in danger, and he fired the gun. That was his "immature reaction at the time." The defense pointed to photographs on social media, entered into evidence at sentencing, of Boswell holding a gun. The defense also attempted to add to the PSI report that defendant "reported he regrets that he used the gun and was protecting himself when he used the gun," but the court rejected this request after noting it had heard the testimony. In direct contradiction to the State's argument, the defense asserted, "[m]y client wasn't walking down the street on a mission, trying to shoot someone." The defense requested 25 to 27 years, asserting defendant's brain was not fully developed at the time of the crime. The defense added that defendant grew up in a culture of gun violence, where he was shot at, and he had since reformed and, if given the chance of release, could be a productive citizen.

¶ 11    In response, the State noted defendant had been found guilty of another aggravated discharge of a firearm a month after shooting Boswell and, for that crime, was sentenced to six years. The State enumerated the sentencing factors (see 730 ILCS 5/5-4.5-105 (West 2020)) that the court was to consider, applying them to the facts of the instant case, and argued there was little mitigating evidence. As to Boswell, the State asserted the trial evidence belied that defendant acted in self-defense. The State argued that defendant's inability to acknowledge he

_____

[4]In the accompanying motion, the defense wrote: "On June 19, 2014, the date of the incident, James walked 20 blocks to a friend's house. He was walking on 71st Street when two guys tried to attack him. DeMarcus and Kajuan moved towards James. James felt threatened and needed to defend himself. He acted impulsively and fired the weapon."

intended to murder Boswell contradicted his claim of rehabilitation, and the State maintained that defendant deserved the 50-year sentence.

¶ 12    The trial court noted it had reviewed all the evidence submitted and observed that prior to the murder defendant had a good upbringing in a stable, two-parent home, and was doing well in school and was college-bound. In short, defendant "a lot going for him." The court found that although Boswell may have threatened defendant before, there was no "credible evidence" that defendant was acting in self-defense when he shot Boswell. "If it was, he wouldn't be sitting here.*** If it's second degree, he'd be out." In support, the court noted that defendant had the right to testify at trial but declined to do so. Defendant similarly declined to offer his version of the offense in the original PSI from 2016. Furthermore, while defendant previously reported in the PSI that he was not in a gang, at resentencing he reported being involved in one from 2007 to 2016, although the court noted it did not place much weight on whether defendant or Boswell was in a gang. The court noted that being in a gang itself was not illegal. The court rejected defendant's self-defense argument and that the victim "was a bad guy" who "deserved killing" and noted that defendant had the opportunity to take a different route that day. The court concluded, at the time of the murder, defendant was mature enough to understand there would be consequences for his actions, and defendant's remorse related more to serving prison time than to killing Boswell. "Maybe some day James Jones will realize, you cannot go out there with a gun in the City of Chicago streets and kill somebody," it said. The court declared that ultimately "it was waste of life" for both defendant and the victim.

¶ 13    Finally, the court stated it had considered the factors in *Buffer*, 2019 IL 122327, ¶ 19, and *People v. Holman*, 2017 IL 120655, ¶ 46, and then vacated the firearm enhancement associated with the murder charge and imposed a sentence of 33 years for murder and a consecutive term of

6

5 years for aggravated discharge of a firearm. See 730 ILCS 5/5-4.5-105(b), (c) (West 2020) (noting, a court may decline to impose such enhancements).

¶ 14                                              ANALYSIS

¶ 15     Defendant now appeals arguing that the court abused its discretion at sentencing. Defendant maintains the court failed to consider mitigating factors, including defendant's youth and immaturity. He further argues the court was ill-disposed towards him because he chose not to testify at trial, and this violated defendant's constitutional right to remain silent.

¶ 16     This case begins with our Supreme Court's *Miller v. Alabama*, 567 U.S. 460 (2012). *Miller* held that mandatory life without parole for juveniles under 18 at the time of their crimes violates the eighth amendment's prohibition against cruel and unusual punishments. On the heels of that, the Illinois supreme court has held that *Miller* and its progeny apply to defendants who committed offenses as juveniles and were sentenced to mandatory life sentences, whether natural or *de facto*, and where the sentencing court failed to consider their youth and its attendant characteristics when imposing the sentence. *People v. Clark*, 2023 IL 127273, ¶¶ 71-72; *Buffer*, 2019 IL 122327, ¶ 27. Notably, a sentence of 40 years or less imposed on a juvenile offender *does not* constitute a *de facto* life sentence. *Clark*, 2023 IL 127273, ¶¶ 72; *Buffer*, 2019 IL 122327, ¶ 41; see also *People v. Dorsey*, 2021 IL 123010, ¶¶ 54, 65 (taking into consideration the juvenile defendants' earliest opportunity for release to assess whether a *de facto* life sentence has been imposed).

¶ 17     Consistent with these cases, section 5-4.5-105 of the Code (730 ILCS 5/5-4.5-105 (West 2020)) now requires a sentencing judge to consider additional mitigating factors at the sentencing hearing of an under-18 offender. See also *Buffer*, 2019 IL 122327, ¶ 46. Section 5-

4.5-105(a) "does not replace the normal sentencing provisions but supplements them."[5] *People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 31; 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2020). The additional factors include the offender's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and whether a cognitive delay or disability is present; whether the offender was subjected to outside pressure by peers, family, or other negative influences; the offender's family, home environment, educational, and social background; the offender's potential for rehabilitation and evidence of rehabilitation; the circumstances of the offense; the offender's degree of participation in the offense; whether the offender meaningfully participated in his defense; the offender's juvenile or criminal history; and any other information the court finds relevant and reliable, including an expression of remorse. 730 ILCS 5/5-4.5-105(a) (West 2020); see also *Holman*, 2017 IL 120655, ¶ 46 (identifying factors).

¶ 18   Contrary to defendant's contention otherwise, while section 5-4.5-105 of the Code requires the trial court to consider the identified factors in mitigation, it does not require the court to find *every factor to be* mitigating. See *Merriweather*, 2022 IL App (4th) 210498, ¶ 31 ("not all mitigating factors may apply in every case"); *cf. People v. McKinley*, 2020 IL App (1st) 191907, ¶ 88 (noting, the factor involving peer pressure and negative influences must always be mitigating in light of *Miller*). The weight attributed to each factor depends on the circumstances of the case, and no single factor is dispositive. *People v. Lusby*, 2020 IL 124046, ¶ 35; *People v. Foster*, 2022 IL App (2d) 200098, ¶ 53. Also, a trial court needn't articulate each factor it

---

[5]The State concedes and defendant does not dispute that sections 5-4.5-105 and 5-4.5-115 of the Code apply, notwithstanding defendant's decision to be sentenced according to the law in effect at the time of his 2014 offense. See 730 ILCS 5/5-4.5-105, 5-4.5-115 (West 2020); *People v. Calhoun*, 377 Ill. App. 3d 662, 664 (2007) (generally, a defendant is "entitled to be sentenced under either the law in effect at the time of the offense or the law in effect at the time of sentencing").

considers in rendering a juvenile offender's sentence, and that omission does not mean the trial court did not consider all relevant factors. *Merriweather*, 2022 IL App (4th) 210498, ¶ 31. Indeed, trial courts are not required to make findings of fact regarding a child's permanent incorrigibility or issue on-the-record sentencing explanations with an implicit finding of permanent incorrigibility even before imposing a discretionary life-without-parole sentence on a murderer under 18. *Jones v. Mississippi*, ⸺ U.S. ⸺, 141 S. Ct. 1307, 1318-21 (2021).[6] In short, "[w]here relevant mitigating evidence is before the court, it is presumed that the court considered it absent some indication in the record to the contrary other than the sentence itself." *People v. Lopez*, 2019 IL App (3d) 170798, ¶ 23. Trial courts still have wide latitude to determine an appropriate sentence within these noted constraints, and we review a court's sentencing decision for abuse of discretion based on the entire record. *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995); *People v. Ward*, 113 Ill. 2d 516, 526-27 (1986). For the following reasons, we find none.

¶ 19    Here, the record expressly rebuts defendant's contention that the trial court failed to consider defendant's youth and its impact on his decision-making skills or the negative influences surrounding defendant and the circumstances of the offense. Defendant's youth (and that of Boswell's) were the center-stage topics at this resentencing hearing, and the court

---

[6]We note that *Holman*, 2017 IL 120655, ¶ 46, appeared to require a more restrictive approach: an on-the-record finding of permanent incorrigibility before courts can impose a discretionary life sentence on juveniles. See also *People v. Reyes*, 2023 IL App (2d) 210423, ¶¶ 60-63; *People v. Ruiz*, 2021 IL App (1st) 182401, ¶¶ 61-62 (following *Holman* and requiring that the trial court "make a finding of permanent incorrigibility prior to imposing a life sentence" on a juvenile). However, recently, our supreme court in *People v. Wilson*, 2023 IL 127666, ¶ 42, expressly overruled *Holman*, and followed *Jones*, stating "additional findings are not required, in that a discretionary sentencing scheme that allows a court to consider youth and its attendant characteristics is 'constitutionally sufficient (*Jones*, 593 U.S. at ___, 141 S. Ct. at 1313).' " *Id*. We believe our supreme court in *Lusby*, 2020 IL 124046, ¶¶ 31, 52, also made clear that no magic words are required, so long as a trial court considers the defendant's youth and its attendant circumstances in mitigation before concluding that a defendant's future should be spent in prison.

considered the subject at length. In addition, defendant was the principal in the murder. Although there was a claimed culture of gun violence and bullying by Boswell and his cohort, the court found there was no credible evidence of self-defense on the day in question. Rather, evidence showed defendant tied his dark hoodie tightly around his face, in an apparent attempt to conceal his identity, and then intentionally approached the two victims and shot one in the face and body from a close range. Both the surviving victim and a disinterested witness observed defendant's actions. Defendant then admitted the murders to two acquaintances without any mention of self-defense, and attempted to hide the gun. The only evidence offered at trial of self-defense was defendant's self-serving statement to police, which the court found incredible. Defendant came from a good home, had no cognitive delays, and was college bound. There was no evidence he was unable to meaningfully participate in his defense.

¶ 20    At the end, the court essentially concluded that defendant's actions that day were not the result of fleeting youth, impulsivity, immaturity, and any of the negative environmental circumstances presented, but rather, reflective of defendant's reasoned decision-making and character. The court expressly found defendant was mature enough to understand he should not kill Boswell and there would be consequences for his actions. Defendant's emphasis years later on self-defense where the court had twice rejected the contention (at trial and posttrial) contradicted his claims of growth and remorse. The court found defendant was not contrite for having committed murder; rather, he had remorse over his imprisonment. In addition, the court implicitly found the seriousness of the offense outweighed any mitigating evidence or rehabilitative potential. See *People v. Kendrick*, 2023 IL App (3d) 200127, ¶ 53 (noting, a trial court need not weigh more heavily the defendant's rehabilitative potential); *People v. Lee*, 379 Ill. App. 3d 533, 539 (2008) (noting, the trial court is the best place to make a determination

balancing the seriousness of the offense against the defendant's potential for rehabilitation); *People v. Garibay*, 366 Ill. App. 3d 1103, 1109 (2006) (noting, the mere existence of mitigating factors does not obligate the trial court to impose the minimum sentence). The court was in a superior position to weigh evidence and make credibility determinations at sentencing. See *Jones*, 168 Ill. 2d at 373; *cf. People v. Bruce*, 2022 IL App (1st) 210811, ¶¶ 34-35 (finding the opposite). And, indeed the court indicated at various points that it did not believe defendant.

¶ 21    As a reviewing court, relying on the cold record, we are not in a position to substitute our judgment for that of the trial court, especially in this case where the court oversaw defendant's trial, original sentencing, and resentencing. See *People v. Alexander*, 239 Ill. 2d 205, 213 (2010). We thus decline defendant's request to reweigh the sentencing factors. A reviewing court cannot substitute its judgment for the trial court merely because it could or would have weighed the factors differently. See *People v. Scott*, 2015 IL App (1st) 131503, ¶ 56. Having reviewed the record, we cannot say the trial court's conclusions were arbitrary, fanciful, or unreasonable such that the sentence amounted to an abuse of discretion. See *People v. Hall*, 195 Ill. 2d 1, 20 (2000). The sentence was not greatly at variance with the spirit and purpose of the law, nor manifestly disproportionate to the nature of the offense. See *Merriweather*, 2022 IL App (4th) 210498, ¶ 26.

¶ 22    We thus reject defendant's contention that the trial court improperly considered as a factor at sentencing defendant's right not to testify at trial and defendant's silence during the initial PSI. As to this matter, the trial court specifically stated:

"There's no issue about self-defense. He [defendant] wants to say that now at a Sentencing Hearing. I want to point out *** the fact [that] at the original Trial, he chose not to testify. That's his right not to testify. He never said one bit at all. He didn't want to testify at the Trial; but I will point out one thing about the original Trial, he was sentenced. The PSI was filed

11

December 7, 2016, in the original case before me. Page 4, Defendant's version of the offense, decline to comment. That's his right also. I don't want to talk to probation at all. Now, he wants to talk to him years later. Oh, by the way, it's self-defense, more or less. Saving it for a rainy day, James Jones."

¶ 23     As the State notes, defendant's present claim is forfeited because defendant failed to raise the objection at sentencing and in a postsentencing motion. See *People v. Bannister*, 232 Ill. 2d 52, 76 (2008). Even forfeiture aside, defendant clearly attempted to emphasize evidence of self-defense that either was not introduced at trial or which the trial court had already found incredible. The court was not incorrect to dismiss defendant's attempt to relitigate his guilt. The court expressly stated that defendant had the right to remain silent, and the court's commentary related to analyzing defendant's credibility. Defendant's two PSIs were part of the record at resentencing. Thus, there was no error. See *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

¶ 24     In addition, for the reasons already stated, we reject defendant's contention that the sentence is excessive based on his lack of prior criminal history and rehabilitative potential. Our supreme court explicitly stated that "a prison sentence of 40 years or less imposed on a juvenile offender provides 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *Buffer*, 2019 IL 122327, ¶ 41, quoting *Miller*, 567 U.S. at 479. Defendant does not contest that he will be eligible for parole in 20 years. See 730 ILCS 5/5-4.5-115 (West 2020) (noting, a "person under 21 years of age at the time of the commission of first degree murder who is sentenced on or after June 1, 2019 *** shall be eligible for parole review by the Prisoner Review Board after serving 20 years or more of his *** sentence or sentences"); see also *Buffer*, 2019 IL 122327, ¶ 46. Parole also provides an opportunity for release, diminishing defendant's claim that his sentence is excessive or that his rehabilitative potential

12

has been discounted. See *People v. Kendrick*, 2023 IL App (3d) 200127, ¶ 42. For the reasons stated, we cannot say the trial court abused its discretion.

¶ 25    Last, defendant argues the court revealed a "sarcastic and dismissive attitude throughout the proceedings." Defendant points to various comments. For example, in response to the defense argument that defendant was age 17, and a juvenile is not then fully mature with a developed brain, the court said, "You might know it's not right to kill someone." In response to the argument that defendant had no control over his environment, the court retorted, "Control of carrying guns around."

¶ 26    The court, while at times acerbic and speaking out of turn, permitted the parties to argue their case at length and the testimony to be presented in full. The court's comments reflected an unwillingness to be manipulated by the defendant's arguments and the grave task the court had before it. The court carefully considered the total evidence, which it stated it had reviewed, and noted several times that it was a waste of life for both young men before concluding, "I take no great pleasure in sending James Jones to prison for [a] long time, but he earned his way. He's entitled to it." There was no prejudice, as defendant argues.

¶ 27                                CONCLUSION

¶ 28    We affirm the judgment of the circuit court.

¶ 29    JUSTICE PUCINSKI, specially concurring:

¶ 30    I agree with the majority that this defendant deliberately shot two people, leaving one of them dead. I can only imagine the horrifying impact of this event on the families of the victims and do not want to minimize that at all. Yet, the science of emerging adults tell us that 17 year old boys are often not able to fully understand the risks of their actions. The sentence of 38 years is likely more than half of this young man's life. If he behaves, and I sincerely hope he will, he

might be able to convince the parole board for a chance of freedom after serving 20 years. That is still a long time, and I sincerely hope that this young man, in those 20 years, finds a way to develop the maturity he needs to have true remorse for his actions, to demonstrate that he has rehabilitated and can live safely in society. After 20 years he would be around 37 years old. That is still young enough to commit serious crimes, but certainly old enough to know right from wrong. This was not a random killing. He has to pay some price. I only hope that he spends his time constructively to learn from his past and create a future for himself that is crime free.